Andrew Watters (#237990)
555 Twin Dolphin Drive, Ste. 135
Redwood City, CA 94065
(415) 261-8527
andrew@andrewwatters.com

Attorney for Plaintiff EDJX, Inc.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDJX, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>vs.<br><br>6X7 NETWORKS LLC, a California limited liability company; BENJAMIN P.D. CANNON, an individual; DOES 1-10,<br><br>   Defendants. | Case No.: 3:21-cv-02398-MMC<br><br>FIRST AMENDED COMPLAINT |

## INTRODUCTION

1. The purpose of this action is to rectify the bilking of a startup company by what turned out to be a fake telecom company run by a scam artist and her associates.

## PARTIES

2. Plaintiff EDJX, Inc. is a Delaware Corporation that is qualified to do business in California. Plaintiff consents to the jurisdiction of the courts in this District for the purposes of this action.

3. Defendant 6x7 Networks, LLC is a business entity of unknown form that is based in California and transacts business in California, and is deemed a resident thereof.

4. Defendant Benjamin P.D. Cannon is a natural person and a resident of California.

5. Defendants Does 1-10 are persons whose names and capacities are unknown to Plaintiff at this time, and who are named as Doe defendants pursuant to CCP sec. 474. As these persons' identities and capacities are discovered, Plaintiff will amend the complaint accordingly.

**JURISDICTION AND VENUE**

6. The U.S. District Court has subject matter jurisdiction pursuant to 18 U.S.C. sec. 1964(a), which confers jurisdiction of racketeering cases on the Federal courts, as well as 1964(c), which permits a private party aggrieved by racketeering activity to seek relief in Federal court. This Court has subject matter jurisdiction of the transactionally related State law claims pursuant to 28 U.S.C. sec 1367(a), in that the State law claims are so related to the Federal claims that they comprise parts of the same case or controversy, and therefore there is both Federal question jurisdiction and supplemental jurisdiction.

7. This Court has personal jurisdiction over all of the Defendants in that they are residents of this State or are deemed residents of this State.

8. Venue is proper in this Court because a substantial portion of the acts and omissions that occurred took place in this District, and also because at least one Defendant resides in this District, namely Benjamin P.D. Cannon.

**GENERAL ALLEGATIONS**

9. "Lady" Benjamin Cannon (Ms. Cannon) is a biologically male individual who identifies as female. In accordance with her stated gender preference, she is identified as "Ms. Cannon" throughout this complaint.

10. Ms. Cannon is CEO of 6x7 Networks, LLC, which is a fake telecom company. In November 2019, Ms. Cannon's colleague in 6x7, Chief Business Officer Kar Dhillon,

approached Plaintiff's CEO and CTO at Plaintiff's trade show booth at the IoT Tech Expo in Santa Clara. Mr. Dhillon made the pitch for Plaintiff to sign for telecom services with Defendants. This initiated an approximately one year-long sales process, which concluded in Fall 2020 around the time Defendants were sued for fraud by multiple other customers.

11. In the 2019-2020 time frame, Plaintiff, a startup company in the edge computing space, needed points of presence (PoPs) to serve its customers throughout its network, which relies on near-edge PoPs to improve the performance of devices in those regions. Plaintiff also needed telecom circuits for internet service and redundancy.

12. Throughout the sales process, Defendants, specifically Mr. Dhillon and Ms. Cannon, represented among other things that Defendants owned a nationwide "dark fiber" network with some 50,000 on-net buildings, and that it would be easy to meet Plaintiff's telecom needs with these assets. Moreover, Defendants represented that such assets could be contributed as part of a joint go-to-market business strategy. These representations were absolutely false when made, which was unknown to Plaintiff, and Plaintiff had no way to discover the information in the exercise of reasonable diligence. In reality, Defendants merely re-sell access to other carriers' fiber—an important fact that they did not disclose and, indeed, actively falsely represented. Further, Defendants had no ability to enter into any form of legal agreement to effect the represented go-to-market business plan.

13. In any case, Defendants proposed partnering with Plaintiff in the following fashion, which is described in broad overview terms:

   a. Plaintiff would supply, at its expense, colocation space, cabinets, and hardware in data centers throughout the United States and potentially elsewhere.

   b. Plaintiff would supply, at its expense, hardware for the cabinets, i.e., "compute

nodes."

 c. Defendants would supply, at their expense, the fiber internet connection and routing equipment for each PoP from their nationwide dark fiber network.

 d. Defendants would have access to the space in the cabinets for their own purposes.

 e. All parties would profit through the arrangement.

14. Plaintiff held up its end of the bargain by supplying colocation space and cabinets, and hardware.

15. Defendants did not hold up their end of the bargain. First, Defendants represented that it was Defendants' internet service that was being supplied at the cabinets. But this turned out to be untrue, in that the service was merely a re-sold Cogent or other carrier's connection that Defendants merely connected their routing equipment to and re-sold, in violation of the applicable Cogent access agreement. Defendants then provided Plaintiff a 10 gig ethernet port that was effectively a passthrough to the real Cogent connection. Only *after* the colocation space and hardware were procured by Plaintiff did Defendants approach Plaintiff seeking new fees for internet service and telecom equipment at the colocation site–in breach of the agreement to set the fee schedule at the same level without changes for at least a year into the contract. Seeing no recourse that would not jeopardize other important partner relationships, Plaintiff signed an agreement to pay for said services under duress. Defendants, of course, withheld the fact that they would be using the connection for their own purposes and traffic, at Plaintiff's expense. Second, Defendants signed a contract with Plaintiff for one price, but then they tacked on *fraudulent wireline telecom charges* that were passed off as actual charges when *no such charges were actually due*. Finally, Defendants attempted to extort Plaintiff into signing new contracts with Defendants by

threatening to shut off their internet service, in violation of the contracts and the law.

16. The situation reached a head in early March 2021, when Ms. Cannon threatened via email to "default you and then sue" unless Plaintiff agreed immediately to the new, exorbitant fees. This was shortly after a phone call that degenerated into a profanity-laden tirade from Ms. Cannon, in which she harassed Plaintiff's staff and executives and acted very unprofessionally.

17. Ms. Cannon followed up her tirade with a bizarre email message demanding immediate payment/acceleration of non-existent obligations in the millions of dollars. This action followed in order to set things right after Ms. Cannon's strange demands and unstable behavior.

## FIRST CAUSE OF ACTION

## FRAUD

(EDJX, Inc. vs. all Defendants)

18. Plaintiff incorporates the above paragraphs by reference.

19. Defendants, through the foregoing course of conduct, made a false promise and made false representations to Plaintiff that induced Plaintiff to partner with Defendants. Specifically, Defendants represented that they had a nationwide "dark fiber" network that *does not exist*, among other false statements about Defendants' capabilities and assets. Defendants further made false promises in that they could not possibly perform the contracts as agreed at the time they entered the contracts. Ms. Cannon and Mr. Dhillon made the false representations and were authorized to speak on behalf of the company.

20. But for these false promises and false representations, Plaintiff never would have partnered with Defendants or signed the underlying contracts.

21. Plaintiff has been harmed.

22. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

23. Wherefore, Plaintiff prays for special damages, general damages, punitive damages, and other further relief as warranted by the law.

## SECOND CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

(EDJX, Inc. vs. all Defendants)

24. Plaintiff incorporates the above paragraphs by reference.

25. Defendants, through the foregoing course of conduct, made a false promise and made false representations to Plaintiff that induced Plaintiff to partner with Defendants and invest substantial time and monies in the partnership. A copy of the contract is attached as *Exhibit A*. Defendants essentially denied Plaintiff the benefits of its contract by denying it a full and fair opportunity to receive the benefits thereof.

26. Wherefore, Plaintiff prays for special damages as provided herein, as well as other further relief warranted by the law.

## THIRD CAUSE OF ACTION

## EXTORTION

(EDJX, Inc. vs. all Defendants)

27. Plaintiff incorporates the above paragraphs by reference.

28. On or about March 12, 2021, Defendants threatened to shut off Plaintiff's internet service

unless Plaintiff signed a new service contract for more than double the price Plaintiff had agreed to in its original contract of July 24, 2020. This was a violation of Penal Code sec. 518 et seq., which makes extortion and attempted extortion a felony. Plaintiff was afraid for its fledgling startup business, which constitutes "fear" under the law (Penal Code sec. 519.1.).

29. Wherefore, Plaintiff prays for special damages, general damages, punitive damages, and such other and further relief as warranted by the law.

## FOURTH CAUSE OF ACTION

## WIRE FRAUD/RACKETEERING

(EDJX, Inc. vs. all Defendants)

30. Plaintiff incorporates the above paragraphs by reference.

31. Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering" to include multiple instances of wire fraud, or committing fraud by means of electronic transmissions over wire. The Defendants here engaged in multiple instances of wire fraud, including multiple fraudulent invoices (at least nine separate invoices within a one-year period). In addition to the fraudulent fiber internet charges described above, Defendants' invoices falsely claimed reimbursement of various wireline telecom charges, surcharges, taxes, and fees *that were not actually due, were not actually paid by Defendants,* and that Plaintiff *never agreed to pay for*.

32. As detailed below, Plaintiff alleges three different causes of action for Federal RICO

violations. In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute.

33. 18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ...."

**Count 1: Violation of 18 U.S.C. § 1962(c)**

34. Plaintiff incorporates by reference and reallege the paragraphs set forth above.

35. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c).

36. Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

37. Defendants' activities include at least nine separate acts of racketeering activity since August of 2020.

38. Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18

U.S.C. § 1961(5).

39. One such act took place in August 2020, when Defendants, in furtherance of the activities, purpose and scheme of the Enterprise, falsely and fraudulently submitted invoices for charges that Plaintiff did not actually owe to Plaintiff using interstate wires, i.e., the Internet.

40. A second such act took place on September 2020, when Defendants, again, in furtherance of the activities, purpose and scheme of the Enterprise, falsely and fraudulently submitted invoices for charges that Plaintiff did not actually owe to Plaintiff using interstate wires.

41. At all times relevant hereto, beginning in 2018, the date of initial filing as an LLC, and continuing through the filing of this action, each Defendant conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

42. On or around December 2019, the date of initial filing to do business in California, Defendants formed an association-in-fact racketeering enterprise, described herein as the Enterprise, within the meaning of 18 U.S.C. § 1961(4).

43. Defendant 6x7 Networks is nominally a telecom company. On information and belief, Defendants created Defendant 6x7 Networks as a front for their ongoing enterprise. However, 6x7 does not do anything Defendants fraudulently represent that it does, e.g. Defendants owned a nationwide "dark fiber" network with some 50,000 on-net buildings. The Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding victims in connection with telecom services and otherwise, such as the telecom transactions in the present case. The

Enterprise is an ongoing organization that functions as a continuing unit. The Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity. Mr. Dhillon and Defendant Cannon, and others, induce customers to use their "services" in an ongoing effort to exploit their naiveté for ill-gotten gains. All Defendants agreed to and did conduct and participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff and others.

44. The wire fraud committed by Defendants is similar to a Ponzi scheme based on a scheme developed and carried out by the Enterprise wherein the Defendants fraudulently charge customers for services they don't use, haven't used, or did not contractually agree to. That is, Defendants take new payments in from new customers to satisfy obligations to existing customers. Defendants have been exploiting the fact that many people, including Plaintiff's principals, simply do not understand the telecom field or the business of telecom as well as Defendants. On information and belief, Defendants have bilked other customers as well, as Plaintiff is not the only victim of Defendants' deceit.

45. Defendants used the wires for the transmission, delivery, or shipment of the following by the Defendants or third parties, all of which are related to the Enterprise, and they were foreseeably caused to be sent as a result of Defendants' illegal scheme:

   a. Wires between Defendants containing false documents and false representations.

   b. Email and telephone communications between Defendants and Plaintiff; and

   c. Payments between Plaintiff and Defendants.

46. Defendants used the Internet and other electronic facilities to carry out the scheme and to conceal their ongoing fraudulent activities.

47. At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

48. The Enterprise engaged in and affected interstate commerce by way of said wire fraud. Defendants caused to be transmitted via interstate wire (California to North Carolina) multiple fraudulent invoices.

49. The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

50. To achieve their common goals, Defendants knowingly and willfully concealed from the public and Plaintiff the unlawfulness of their conduct, which was committed at the instruction of, and through the directions of, organized criminals.

51. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff have been injured in their business and property, causing Plaintiff to suffer monetary damages in an amount not less than $71,000, said damages to be proven at the time of trial.

52. Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff have sustained, plus the cost of this suit,

11
FIRST AMENDED COMPLAINT

including reasonable attorneys' fees.

## Count 2: Violation of 18 U.S.C. § 1962(a)

53. Plaintiff incorporates by reference and reallege the paragraphs set forth above.

54. 18 U.S.C. § 1962(a) makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

55. As alleged in paragraph 206, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

56. As alleged in the preceding section, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

57. At all times relevant hereto, beginning on or around 2018 and continuing at least through the the filing of this action, Defendants received income derived from a pattern of racketeering activity to use or invest a part of such income or the proceeds of such income in the establishment and operation of an enterprise that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

58. As alleged in the preceding section, on or around 2018, Defendants formed the Enterprise to effectuate Defendants' pattern of racketeering activity.

59. All Defendants agreed to and did use income received directly from a pattern of racketeering activity to control, establish and operate the Enterprise, which was engaged in and affected interstate commerce, including wire fraud as defined by 18 U.S.C. § 1343, and for the unlawful purpose of intentionally defrauding Plaintiff.

60. The wire fraud committed by Defendants is set forth in the preceding section and is incorporated by reference herein.

61. As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff have been injured in their business and property, causing Plaintiff to suffer monetary damages of at least $33,000 in fraudulent charges, said damages to be proven at the time of trial.

62. Because of Defendants' violations of 18 U.S.C. § 1962(a), Defendants are liable to Plaintiff for three times the damages Plaintiff have sustained, plus the cost of this suit, including reasonable attorneys' fees.

**Count 3: Violation of 18 U.S.C. § 1962(d)**

63. Plaintiff incorporates by reference and reallege the paragraphs set forth above.

64. 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

65. As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

66. At all relevant times, beginning in or around 2018 and continuing at least through the termination of the scheme, the Defendants and each Defendant agreed to and did conspire

13
FIRST AMENDED COMPLAINT

to violate 18 U.S.C. §§ 1962 (a) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the Enterprise described above; and to receive income derived from a pattern of racketeering activity and to use such income or the proceeds of such income in the establishment and operation of that enterprise.

67. Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud).

68. Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described previously.

69. Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

70. Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (a), in violation of 18 U.S.C. § 1962(d).

71. As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff have been injured in their business and property, causing Plaintiff to suffer monetary damages in an amount not less than $33,000, said damages to be proven at the time of

trial.

72. Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

## BREACH OF CONTRACT

(EDJX, Inc. vs. 6x7 Networks, LLC and Does 1-10)

73. Plaintiff incorporates the above paragraphs by reference.

74. Plaintiff and Defendants had a contract, which is attached as *Exhibit A*.

75. Plaintiff did all, or substantially all, of the important things required by the contract, or was excused from doing those things by the conduct of Defendants.

76. Defendants breached the contract by failing to deliver the services called for by the agreement in accordance with the agreement, and threatened to repudiate the contract that was five years long as well.

77. This cause is asserted in the alternative to the sixth cause of action for rescission.

78. Defendants knew that Plaintiff was a new startup company that was counting on having services for certain periods of time, and Defendants breached the contract anyway, causing lost profits.

79. Defendants knew Plaintiff would be making substantial profits from the contract, and in fact Defendants agreed to pay commissions for new business generated by Plaintiff as stated in the contracts. Despite this, Defendants intentionally breached the contract and worse, threatened to "default you and then sue" as if they never intended to perform.

80. Wherefore, Plaintiff prays for special damages, including lost profits, and any other relief warranted by the law.

## SIXTH CAUSE OF ACTION

## DECLARATORY RELIEF (RECISSION)

(EDJX, Inc. vs. all Defendants)

81. Plaintiff incorporates the above paragraphs by reference.

### Count One

82. Plaintiff and Defendants had a contract, which is attached as *Exhibit A* above.

83. Plaintiff only entered the contract with Defendants due to Defendants' fraud in representing that they were a bona fide telecom company, could deliver the services, had a nationwide "dark fiber" network, and similar representations.

84. Essentially none of Defendants' representations was true, and Defendants knew the representations were untrue and that they were committing fraud. This is especially offensive in light of Defendants' multiple fraud lawsuits that were filed or pending against Defendants approximately at the same time Defendants signed Plaintiff for services *with the same exact pattern of fraud*. Plaintiff had no way to discover the untruth of the representations in the exercise of reasonable diligence.

### Count Two

85. Ms. Cannon recently demanded payment of non-existent obligations, as set forth in her fake invoices (Exhibit B) and her demand email that is attached as *Exhibit C*. Therefore, there is an actual controversy over whether Plaintiff has any liability for any of these fabricated claims (there is no liability

for the claims, which are non-existent and based on contingent obligations). Accordingly, Plaintiff seeks declaratory relief as to the parties' obligations and rescission of the operative agreements based on fraud, as described above.

86. Wherefore, Plaintiff prays for rescission of the operative contracts, incidental damages, and attorney fees, as well as other relief warranted by the law.

## SEVENTH CAUSE OF ACTION

## UNFAIR COMPETITION

(EDJX, Inc. vs. all Defendants)

87. Plaintiff incorporates the above paragraphs by reference.

88. Through the foregoing course of unlawful conduct, including but not limited to extortion (Penal Code sec. 518 et seq.), wire fraud (18 U.S.C. sec. 1343 et seq.), and racketeering (18 U.S.C. sec. 1961 et seq.), Defendants violated the unfair competition law at Bus. And Prof. Code sec. 17200 et seq.

89. Wherefore, Plaintiff prays for an injunction in the form provided in *Exhibit D* as well as restitution and disgorgement of profits associated with the unfair competition.

## PRAYER

1. Special damages according to proof.
2. General damages according to proof.
3. Punitive damages according to proof.
4. Attorney fees.
5. Pre-judgment interest on all monies paid.

6. Treble damages.

7. A permanent injunction in the form attached hereto as *Exhibit D*.

8. Costs of suit.

9. Return of all EDJX property in Defendants' custody.

Dated: June 9, 2022

*Andrew G. Watters*
_____
Andrew G. Watters, Esq.
Attorney for Plaintiff EDJX, Inc.

18
FIRST AMENDED COMPLAINT